J. W. ·DONNELL *v.* MRS. ELIZABETH McCULLOUGH *et al.*\*

*Nashville.*   December Term, 1925.

EXECUTORS AND ADMINISTRATORS.   Creditors paid in full after suggestion of insolvency could be compelled to restore payment in excess of pro rata due them.

> After insolvency of estate was suggested, and after publication for creditors to file claims, right of creditors to share assets ratably became fixed, and county court was vested with jurisdiction of demands of creditors, and creditors thereafter paid in full could be compelled in equity to restore payment in excess of *pro rata* due them thereon.

> Cases cited and approved: Burchard v. Phillips, 1 Paige, 67; Hubbard v. Epps, 68 Tenn., 238; Watson v. Watson, 60 Tenn., 389; Dishmore v. Jones, 41 Tenn., 554; Fields v. Wheatley's Creditors, 33 Tenn., 351; Winton v. Eldridge, 40 Tenn., 361; Jones v. Williamson, 45 Tenn., 379; Ewing v. Maury, 71 Tenn., 381; Watson v. Watson, 60 Tenn., 387; Johnson v. Molsbee, 73 Tenn., 444.

> Cases cited and distinguished: Ewing v. Maury, 71 Tenn., 389; Bacchus v. Peters, 85 Tenn., 680; Watson v. Watson, 60 Tenn., 389.

---

\*Headnote 1.  Executors and Administrators, 24 C. J., Section 1258.

---

FROM RUTHERFORD.

---

Appeal from the Chancery Court of Rutherford County.—HON. THOS. B. LYTLE, Chancellor.

S. S. BROWN, for appellant.

WALTER STOKES, for appellees.

Mr. Justice Hall delivered the opinion of the Court.

H. L. McCullough, a citizen and resident of Rutherford county, Tenn., died intestate September 23, 1919.

The complainant, J. W. Donnell, qualified as his administrator within a few days thereafter.

On April 7, 1920, the administrator, finding that the personal property was not sufficient to pay the debts of his intestate, suggested the insolvency of the estate to the county court of Rutherford county, and on said date, pursuant to an order of the clerk of the county court of said county, the administrator made due publication of the suggestion of said insolvency, notifying all persons having claims against said estate to file them with the clerk of the county court of Rutherford county within the time prescribed by law, or they would be barred both in law and equity.

Among the numerous creditors of said estate were the defendants (appellees here) R. W. and W. T. Hale, who held a note against said estate for the sum of $5,000, with accrued interest amounting to $578.55; the total principal and interest due on said note amounting to $5,578.55.

Complainant's intestate owned, at the time of his death, considerable personal property and a large landed estate, and owed a large indebtedness, and the administrator, believing that the personalty and realty belonging to said estate would prove sufficient to pay all debts owing by said estate, on April 16, 1920, paid defendant's note, with accrued interest, in full.

On June 3, 1922, complainant filed a general insolvency

bill in the chancery court of Rutherford county against
his intestate's widow, Mrs. Elizabeth McCullough, and
her four children, R. H. Bryson, Bank of Woodbury, John
A. Womack, and all other creditors and parties interested
in said estate, alleging that said estate was insolvent,
and that certain claims had been filed with the clerk of
the county court of Rutherford county, that the deceased
was, at the time of his death, the owner of certain real
estate mentioned and described in the bill, and that it
was necessary to sell said real estate, or a sufficiency
thereof, to pay the debts owing by said estate; the per-
sonalty being insufficient for that purpose. The defend-
ants (appellees) were not specifically designated by name
as parties defendant to this bill.

The bill prayed that the administration of said estate
be transferred from the county court to the chancery
court of said county; that all necessary references be or-
dered, and that all proper and necessary steps be taken,
to the end that said estate be wound up and the assets
properly distributed amongst its creditors; that all pro-
ceedings with reference to the administration of said es-
tate in the county court be enjoined; that the commence-
ment and prosecution of any and all other actions against
complainant, or the estate of his intestate, be enjoined,
and that all persons having claims against said estate be
required to prove and file them with the clerk and mas-
ter of the chancery court; that the real estate of com-
plainant's intestate be sold for the payment of debts;
that the homestead and dower interest of the widow be
ascertained, reported, and paid to her in cash; that the
balance of the proceeds of the said real estate be applied
to the payment of debts owing by said estate.

On May 19, 1923, complainant filed an amended bill in said cause, specifically naming defendants (appellees) as defendants thereto. This amended bill set out at some length the allegations of the original bill, and then alleged the following:

"Now, by leave of your honor, complainant brings this amended bill into your honor's court, and shows to the court that the said H. L. McCullough was indebted to R. W. Hale, a resident of Rutherford county, Tenn., and W. T. Hale, a resident of Davidson county, Tenn., by note in the sum of $5,578.55, which sum represents the principal and interest of said note; that said amount was paid to the said R. W. Hale and W. T. Hale by complainant on April 16, 1920, and was the full amount of said decedent's obligation to the said R. W. Hale and W. T. Hale. At the time of the payment of said note as aforesaid complainant was of the opinion that the estate of said decedent would fully pay all of the obligations against it, and would leave a very considerable surplus to be distributed among his heirs, but since its payment he had ascertained that said estate is utterly insolvent, and that the personalty and realty belonging to said decedent at the time of his death will not be sufficient to pay all of the *bona-fide* outstanding obligations against it, and that therefore the said R. W. Hale and W. T. Hale are only entitled to their *pro rata* out of the estate of said decedent, and complainant is informed, and so charges, that the said R. W. Hale will be required by decree of the court to return to him, or to the court, so much of the amount so paid them as exceeds the actual *pro rata* to which the creditors of said decedent are entitled."

The prayer of this amended bill is that a decree be rendered against defendants (appellees) for the amount of the note theretofore paid them by complainant, in excess of the *pro rata* due them on their debt, the net assets of the estate being insufficient to pay all creditors in full, and sufficient to pay only about sixty per cent. of the indebtedness owing by said estate.

To this amended bill defendants (appellees) filed a demurrer on May 19, 1923, setting up the following defenses:

(1) That they were *bona fide* creditors of the estate of complainant's intestate, and had a right to receive their debt in full; that complainant had the custody and control of all assets belonging to said estate, and voluntarily paid the debt owing to defendants, and it is not alleged that they acted fraudulently or in bad faith in receiving said payment; and that, if complainant improperly and wrongfully paid said indebtedness, then the responsibility to account for the excess which defendants would have received on final settlement of said estate rests upon him and his bondsmen.

(2) That the complainant paid the debt owing to defendants after he had suggested the insolvency of said estate, without any bad faith or fraud on their part, and he and his bondsmen alone are responsible for the same.

(3) That complainant voluntarily paid the debt owing to defendants by said estate, and it is not alleged that he took any refunding bond, or had any agreement or understanding with defendants to repay to him said sum, or any part thereof, if the estate proved insolvent.

On the hearing the chancellor sustained the demurrer and dismissed complainant's amended bill.

From this decree complainant has appealed to this court, and has assigned the action of the chancellor for error.

In Pritchard on Wills and Administration, section 831, it is said:

"The legal import of the suggestion of insolvency is that the executor or administrator, or the creditor making the suggestion, has ascertained that the personal assets will probably prove insufficient to satisfy all the debts, and that the estate is to be divided ratably among the creditors who present and establish their demands within the time and in the mode prescribed by law; and if the suggestion is made in good faith and on reasonable grounds, and the estate proves to be insolvent, the right of the creditors to share the assets ratably becomes fixed from the date of the suggestion. The suggestion of insolvency, followed by the order of the clerk directing the administrator to make publication for creditors, and publication made accordingly, constitute the institution of a suit in the county court for the administration of the estate, and vest that court with jurisdiction of the demands of all creditors and the entire assets of the estate, and that jurisdiction is exclusive, unless the administration is transferred to the chancery court under a bill filed for that purpose in a proper case."

In *Ewing* v. *Maury,* 3 Lea, 389, the court said: "The suggestion of the insolvency of the estate, the estate proving actually insolvent, fixed the right of every creditor to a ratable share of the estate, and, *e converso,* necessarily deprived every creditor of the right to more than that ratable share. The record shows, and the fact is not disputed, that the administrator did, on the 2d day

of December, 1867, pay to the appellant the full amount of his claim. This was done under the belief, at that time entertained by all parties, that, although the estate was insolvent as to the personalty, the realty would sell for more than enough to pay all the debts. If, now, the payment had been made with the express agreement that the creditor should refund if it should eventually be found that he was not entitled to his debt in full, such an agreement would be sustained by the consideration of the payment, and would be binding. The final decree complained of recites that the administrator made such an agreement, and took from the appellant a bond conditioned to refund the excess. The argument is that the recital of the decree is not sustained by the facts in evidence, the report of the matter only stating that the administrator had taken such a bond 'as he alleged.' At a previous term of the court, the master, in pursuance of a decretal order to that effect, reported that he had taken and stated an account with the administrator, a summary of which is embodied in the report, and all the items of which, debit and credit, are given in a schedule appended to the report. Among the credits thus allowed to the administrator are the payments made to the appellant, on the 2d of December, 1867, in full of his claims. The master further reports as follows: 'The administrator took from John S. Park, at the time of the payment made to him, his obligation to refund whatever portion might be necessary in the event the estate should prove insolvent.' This report was on the 5th of October, 1871, in all respects confirmed, no exceptions by any party having been filed to it. If, therefore, the rights of the appellant depend upon a positive statement by the clerk of the fact

that the administrator had taken a refunding bond, here we have that fact in a report not excepted to by him. The real doubt, however, though not urged in argument, is whether the recital was within the purview of the reference under which the report was made.

"Be this as it may, the fact is beyond dispute that the appellant received during the progress of the suit, to which he had become a *quasi*-party by filing his claim and having it allowed, more than he was ratably entitled to out of the assets of the estate. These assets were obtained by a sale of lands belonging to the heirs, and constituted a fund in the custody of the court in trust for the creditors ratably. Every creditor, and every party to the suit who received any portion of this fund, unless paid to him by order of the court, would receive it coupled with the trust. There is no order of court directing the fund in controversy to be paid to the appellant on his claim or otherwise. There is no order of court for the payment of any portion of the assets *pro rata* or otherwise to the creditors. No rate bill and no dividend was ever made until the June term, 1875. The appellant has obtained in some way more than his share of these trust moneys. The power of the court, in a summary way, to compel a party who has obtained possession of its funds without authority, to restore the same, can scarcely be doubted. *Burchard* v. *Phillips* [11], 1 Paige, 67."

In *Bacchus* v. *Peters,* 85 Tenn., 680, 4 S. W., 834, it was said: "The object of our statutes for the administration of insolvent estates (applying, as they do, alike to estates of residents and nonresidents—*Hubbard* v. *Epps,* 9 Baxt., 238) is to secure equality of distribution among creditors of all the assets, real and personal. Hence it

is held that the legal effect of the suggestion of insolvency is to appropriate the land (with other property) of the debtor for a *pro rata* distribution among his creditors, after first satisfying such as had fixed or specific liens. *Watson* v. *Watson,* 1 Baxt., 389.''

In *Watson Adm'r,* v. *Watson et al.,* 1 Baxt., 389, the court said: ''By this conveyance Watson was vested with the legal and the equitable title, but subject to King's implied lien for the $1,100 note. [*Dishmore* v. *Jones*], 1 Cold., 554. This was the state of things until the suggestion of the insolvency of Watson's estate in 1865. The legal effect of that suggestion was to appropriate the tract of land for a *pro rata* distribution among Watson's creditors, after first satisfying such as had fixed on specific liens. [*Fields* v. *Wheatley's Creditors*], 1 Sneed, 351; [*Winton* v. *Eldridge*], 3 Head, 361; [*Jones* v. *Williamson*], 5 Cold., 379.

''Down to the suggestion of the insolvency King had an equity, which he had the right to ripen into a fixed lien by filing his bill to enforce satisfaction of his $1,100 note out of the land. Having failed to avail himself of this right until the insolvency was suggested, he thenceforward was a simple creditor of the estate, without such fixed or specific lien as gave him a priority over other general creditors.''

In *Bank* v. *Susong,* 18 S. W., 390, 90 Tenn., 595, the court said: ''If the second bills be regarded as original bills, it is clear that the complainants have no liens, and that the chancellor's decree is right, because they were filed after the death of the debtor and after the insolvency of his estate had been duly suggested. In such case the law requires a ratable distribution of the assets

among all creditors not having previously acquired definite and fixed liens. Code (M. & V.), sections 3169, 3170, 3173, 3234; *Ewing* v. *Maury,* 3 Lea, 381; [*Watson* v. *Watson*], 1 Baxt., 387.''

We think, upon the foregoing authorities, and in view of the fact that the debt of defendants was paid by complainant after the insolvency of the estate had been suggested, and due publication for all creditors to file their claims with the clerk of the county court, the right of the creditors to share the assets of the estate ratably became fixed, and vested the county court with jurisdiction of the demands of all creditors and the entire assets of the estate. In other words, this proceeding by the administrator constituted the institution of a suit in the county court for the administration of said estate, and no creditor was entitled to receive more than his just *pro rata* of the assets of the estate in the payment of his debt, and, the defendants having received more than their share of the net fund arising from a sale of the assets of said estate, the power of a court of equity to compel them to restore the excess cannot be doubted.

Defendants' counsel in support of the decree rendered by the chancellor, relies on *Johnson* v. *Molsbee,* 5 Lea, 444.

We do not think that case is controlling here. In that case there had been no suggestion of the insolvency of the estate at the time the administrator paid Fulkerson's debt in full. On the contrary, it was expressly said by the court that it was clearly inferable from the bill that the estate was solvent at this time, and afterwards became insolvent on account of the mismanagement and waste of the administrator.

Donnell v. McCullough.

The decree of the chancellor is reversed, and the cause is remanded to the chancery court, for further proceed ings not inconsistent with this opinion.

The defendants will be taxed with the costs of the appeal.